AO 93C  (Rev. 8/18) Warrant by Telephone of Other Reliable Electronic Means          ☐ Original    ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
for the
Central District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched or identify the<br>person by name and address)*<br>1522 West Lorane Way<br>Anaheim, CA 92802 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 8:21-MJ-00159

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the Central District of California *(identify the person or describe the property to be searched and give its location)*:

*See Attachment A*

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

*See Attachment B*

Such affidavit(s) or testimony are incorporated herein by reference and attached hereto.

**YOU ARE COMMANDED** to execute this warrant on or before <u>14 days from the date of its issuance</u> *(not to exceed 14 days)*

☒ in the daytime 6:00 a.m. to 10:00 p.m.   ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to <u>the U.S. Magistrate Judge on duty at the time of the return through a filing with the Clerk's Office.</u>

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for_____days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:      March 1, 2021 at 5:22 p.m.

Judge's signature

City and state:      Santa Ana, CA          Hon. John D. Early, U.S. Magistrate Judge
Printed name and title

AUSA:      D. Ahn  (714-338-3539)

AO 93C (Rev. 8/18) Warrant by Telephone of Other Reliable Electronic Means (Page 2)

(Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br>8:21-MJ-00159 | Date and time warrant executed:<br>March 11, 2021, at 6:00 A.M. | Copy of warrant and inventory left with:<br>Richard Wayne Nichols |

Inventory made in the presence of :
HSI Special Agent Aron Klaff

Inventory of the property taken and name of any person(s) seized:
•Gray Dell Laptop.
•Black Google Pixel4 cellular phone.
•Black Dell laptop with red trim.
•Alienware laptop computer.
•4-page spreadsheet with names, usernames, and passwords.
•White Intel thumb drive.

---

**Certification**

    I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date:  March 11, 2021

_____
*Executing officer's signature*

Tim Kirkham, HSI Special Agent
_____
*Printed name and title*

## <u>**AFFIDAVIT**</u>

I, Timothy Kirkham, being duly sworn, declare and state as follows:

## I.     <u>INTRODUCTION</u>

1.     I am a Special Agent with the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"), assigned to the Special Agent in Charge in Los Angeles, Office of the Assistant Special Agent in Charge, Orange County, California. I have been so employed since September 2007. As part of my Special Agent training, I attended a 22-week training academy at the Federal Law Enforcement Training Center in Glynco, Georgia. As part of my daily duties as an ICE agent, I investigate, among other things, offenses related to the sexual exploitation of children and child pornography in the Central District of California as part of the HSI Office of the Assistant Special Agent in Charge, Orange County, Child Exploitation Investigations Group ("CEIG"). HSI's Orange County CEIG is responsible for enforcing federal criminal statutes that prohibit the sexual exploitation of children under 18 U.S.C. § 2251 et seq.

2.     I have received training regarding the investigation of child pornography and child exploitation offenses. In that capacity, I have become familiar with numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media, including digital media. I have also participated in the execution of numerous search warrants, many of which were executed as part of investigations of child exploitation and child pornography offenses. I have also conducted, participated in, and received training in numerous investigations of criminal activity, including, but not limited to, the investigation of narcotics offenses, money laundering, fraud, child pornography, alien smuggling, human trafficking, and Title III wire communication interception investigations. During the investigation of these matters, I have executed, and participated in the execution of, search warrants, and have seized materials constituting evidence of offenses in violation of the United States Code.

## II.     <u>PURPOSE OF AFFIDAVIT</u>

3.     This affidavit is made in support of an application for a warrant to search the

premises located at 1522 West Lorane Way, Anaheim, CA 92802 (the "SUBJECT PREMISES"), more fully described below and in Attachment A, which is attached hereto and incorporated herein by reference.  The requested search warrant seeks authorization to seize any evidence, fruits, or instrumentalities at the SUBJECT PREMISES of violations of 18 U.S.C. § 2252A(a)(5)(B) (possession of child pornography) and 18 U.S.C. § 2252(a)(4)(B)(i)(ii) (accessing with the intent to view child pornography) (the "Subject Offenses"), or any device that is itself an instrumentality of the Subject Offenses.

4.      The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### III.      PREMISES TO BE SEARCHED

5.      The SUBJECT PREMISES is the property located at 1522 West Lorane Way, Anaheim, CA 92802, any outbuildings, and any appurtenances thereto.  The SUBJECT PREMISES is a single-story single-family home.  The SUBJECT PREMISES is white with blue eaves and trim and a grey shingle roof.  Black numbers "1522" are painted on the curb in black on a white background.  The SUBJECT PREMISES is on the south side of Lorane Way.  The front door is facing east and has a black metal security.

### IV.      SUMMARY OF PROBABLE CAUSE

6.      On November 24, 2020, I received National Center for Missing and Exploited Children ("NCMEC"), CyberTipline Report ("CT") 82892182.  According to the CT, Google account cosmicblort@gmail.com ("SUBJECT ACCOUNT") was used to upload a child pornography video to the Google Drive Infrastructure.  Through further investigation, I learned the SUBJECT ACCOUNT is the subject of 56 other NCMEC CTs regarding suspected child pornography.  I viewed the content of 33 CTs involving the SUBJECT ACCOUNT and found that all 33 CTs contained child pornography and/or child erotica videos and/or images.

7.      According to the CTs, the SUBJECT ACCOUNT is associated with the email address rwnichols@capousd.org.  Through internet research I learned the email address rwnichols@capousd.org is associated with Rick Nichols, the theatre manager at Capistrano Performing Arts Center at Capistrano Valley High School.

8.      On December 6, 2020, I served a search warrant, case number 8:20-MJ-00847, to Google, LLC for the content of the SUBJECT ACCOUNT.  The search warrant was authorized by the Honorable Autumn D. Spaeth, U.S. Magistrate Judge, Santa Ana, CA.  On January 7, 2021, I received a response from Google LLC that contained the content of the SUBJECT ACCOUNT.  The response contained approximately 2 terabytes of files.  I have reviewed the response and found the account contains a large amount of child pornography as well as indicia of ownership indicating the account belongs to Richard Wayne Nichols, also known as Rick Nichols, date of birth May 25, 1965,1522 West Lorane Way, Anaheim, CA 92802 ("NICHOLS").

9.      Thus, there is probable cause to believe that the SUBJECT PREMISES contains evidence of the Subject Offenses.

## V.      **DEFINITIONS**

10.      The following terms have the indicated meaning in this affidavit:

a.      "Chat," as used herein, refers to any kind of text communication over the Internet that is transmitted in real-time from sender to receiver.  Chat messages are generally short in order to enable other participants to respond quickly and in a format that resembles an oral conversation.  This feature distinguishes chatting from other text-based online communications such as Internet forums and email.

b.      "Child erotica," as used herein, means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not necessarily obscene or do not necessarily depict minors engaging in sexually explicit conduct.

c.      "Child pornography," as defined in 18 U.S.C. § 2256(8), is any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical or other means, of sexually explicit conduct, where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct.

d.      "Computer," as used herein, refers to "an electronic, magnetic, optical, electrochemical, or otherhigh speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device" and includes smartphones, other mobile phones, and other mobile devices. *See* 18 U.S.C. § 1030(e)(1).

e.      "Computer hardware," as used herein, consists of all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, "thumb," "jump," or "flash" drives, which are small devices that are plugged into a port on the computer, and other memory storage devices); peripheral input/output devices (including keyboards, printers, video display monitors, and related communications devices such as cables and connections); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including physical keys and locks).

f.      "Computer passwords and data security devices," as used herein, consist of information or items designed to restrict access to or hide computer software,

4

documentation, or data.  Data security devices may consist of hardware, software, or other programming code.  A password (a string of alpha- numeric characters) usually operates what might be termed a digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards.  Data security software may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched.  Data security software or code may also encrypt, compress, hide, or "booby- trap" protected data to make it inaccessible or unusable, as well as reverse the process to restore it.

g.      "Geolocated," as used herein, refers to the identification of the geographical location of (a person or device) by means of digital information processed via the Internet.

h.      "Hashtag," as used herein, refers to a word or phrase preceded by a hash or pound sign ("#"), which is used to identify messages or groups on a specific topic.

i.      A "hash value" is a unique multi-character number that is associated with a computer file. Some computer scientists compare a hash value to an electronic fingerprint in that each file has a unique hash value. Any identical copy of the file will have exactly the same hash value as the original, but any alteration of the file, including even a change of one or two pixels, would result in a different hash value. Hash values represent large amounts of data as much smaller numeric values, so they are used with digital signatures.

j.      "Internet Service Providers" ("ISPs"), as used herein, are commercial organizations that are in business to provide individuals and businesses access to the Internet.  ISPs provide a range of functions for their customers including access to the Internet, web hosting, email, remote storage, and co-location of computers and other communications equipment.

k.   An "Internet Protocol address" or "IP address," as used herein, refers to a unique numeric or alphanumeric string used by a computer or other digital device to access the Internet.  Every computer or device accessing the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer or device may be directed properly from its source to its destination.  Most Internet Service Providers ("ISPs") control a range of IP addresses.  IP addresses can be "dynamic," meaning that the ISP assigns a different unique number to a computer or device every time it accesses the Internet.  IP addresses might also be "static," if an ISP assigns a user's computer a particular IP address that is used each time the computer accesses the Internet.  ISPs typically maintain logs of the subscribers to whom IP addresses are assigned on particular dates and times.

l.      The "Internet" is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

m.   "Minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years.

n.      "Mobile application" or "chat application," as used herein, are small, specialized programs downloaded onto mobile devices, computers and other digital devices that enable users to perform a variety of functions, including engaging in online chat and sending or receiving images and videos.

o.      "Records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade, photographic, mechanical, electrical, electronic, or magnetic form.

p.      "Remote computing service," as defined in 18 U.S.C. § 2711(2), is the provision to the public of computer storage or processing services by means of an electronic communications system.

q.      "Sexually explicit conduct," as defined in 18 U.S.C. § 2256(2), means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the anus, genitals, or pubic area of any person.

r.      A "storage medium" is any physical object upon which computer data can be recorded.  Examples include hard disks, RAM, floppy disks, "thumb," "jump," or "flash" drives, CD-ROMs, and other magnetic or optical media.

s.      "Visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

t.      "PhotoDNA" creates a unique digital signature (known as a "hash") of an image which is then compared against signatures (hashes) of other photos to find copies of the same image. When matched with a database containing hashes of previously identified illegal images, PhotoDNA is an incredible tool to help detect, disrupt and report the distribution of child exploitation material. PhotoDNA is not facial recognition software and cannot be used to identify a person or object in an image. A PhotoDNA hash is not reversible, and therefore cannot be used to

7

recreate an image.

## VI.   STATEMENT OF PROBABLE CAUSE

11.   On November 24, 2020, I received NCMEC CT 82892182, which disclosed that, on November 27, 2020, the SUBJECT ACCOUNT uploaded to Google Drive a single image believed to be child pornography.

a.   Based on my training and experience, I know that Google Drive is a cloud-based storage system that allows Google account holders to store files in the cloud and access them anywhere from any smartphone, tablet, or computer.  In my experience, those who possess child pornography will often store child pornography on cloud-based servers or other decentralized systems, so it is not saved on digital devices in the direct possession of that person. According to the CT, the following information was associated with the SUBJECT ACCOUNT:

> Account Name: Rick N
> Mobile Phone: 714-845-8801
> Mobile Phone: 714-803-9798
> Email Address: cosmicblort@gmail.com
> Email Address: rwnichols@capousd.org

12.   The NCMEC CT also identified the following additional CTs as associated with the SUBJECT ACCOUNT: 82737134, 82755180, 82790122, 82767977, 82777832, 82764390, 82751719, 82869113, 82749284, 82736992, 82771070, 82870240, 82737274, 82737147, 82737275, 82863719, 82744690, 82736883, 82737099, 82758987, 82768459, 82737222, 82744007, 82759623, 82736836, 82748482, 82770138, 82741465, 82737236, 82740564, 82737106, 82748882, 82736979, 82771539, 82872525, 82776751, 82737324, 82754858, 82741035, 82736936, 82736681, 82737063, 82737061, 82737317, 82750373, 82755232, 82741947, 82736952, 82864169, 82739764, 82774069, 82747061, 82736947, 82768947, 82739376, 82743601, 82869907, 82737034, 82769418, 82751368, 82892182, 82737030, 82767623, 82749700, 82754308, 82736773, 82742533, 82743173, 82737025, 82784128,

82811550, 82761626, 82774555, 82762265, 82737045, 82748050.

13.     I viewed the content of 33 CTs involving the SUBJECT ACCOUNT and found that all 33 CTs contained child pornography and/or child erotica videos and/or images.  For example, I reviewed CT 82768459, dated November 13, 2020.   CT 82768459 included seven videos that were uploaded to Google Drive by the SUBJECT ACCOUNT.  The CT further indicated that Google (the ESP) had initially viewed the entire contents of the uploaded files.  I reviewed the videos associated with CT 82768459, three of which are described as follows:

a.     The file named xtmnoos (54).avi (included in the CT as 4c4899e980dda190c5d09a379db77ba0-xtmnoos (54).avi) is a video lasting fifteen minutes and fifteen seconds.  It is a compilation of an approximately 9 to 11-year-old pre-pubescent Caucasian female that is engaged in oral copulation and vaginal intercourse with an adult male, digital penetration of herself, and digital penetration by the adult male.  The minor female has shoulder length brown hair and the adult male is balding on the back of his head and has light brown hair.

b.     The file named xtmnoos (100).mpg (included in the CT as Google-CT-RPT-04741202de6901060bbafa4f4124e99f-xtmnoos(100).mpg) is a video lasting twelve minutes and seventeen seconds.  It depicts two Caucasian females that appear to be 12 to 14 years old.  The two minor females are wrestling on a bed while one is nude and the other is partially clothed.  Once the wrestling is over, the minor female with red hair, lays on the bed then rubs and digitally penetrates her vagina while an adult male does the same.

c.     The file named yolo-14947301461928010998.mp4 (included in the CT as file Google-CT-RPT-12246b4a86ddd3e 6e4edfb060a7dc294-yolo-14947301461928010998.mp4) is video lasting two minutes and twenty-eight seconds.  It depicts an approximately 12 to 14-year-old Caucasian female with brown hair wearing a white sports bra and blue leggings.  During the

9

video, the minor female rubs and digitally penetrates her vagina while sitting in a white chair or standing in front of the white chair.

14.     On December 4, 2020, the Honorable Autumn D. Spaeth, U.S. Magistrate Judge, Central District of California, Santa Ana, CA authorized a search warrant pursuant to 18 U.S.C. § 2703 for the SUBJECT ACCOUNT.  On January 6, 2021, Google uploaded the responsive data, which consisted of approximately 1.5 Terabytes of data, to the Google Law Enforcement Portal to be downloaded by me.  I reviewed the data, and found that the account contained child pornography, indicia of ownership belonging to NICHOLS, and other information.  Below is the subscriber information for the SUBJECT ACCOUNT and Google accounts associated with the SUBJECT ACCOUNT:

      a.     Cosmicblort@gmail.com

      Google Account ID: 484108380321

      Name: Rick N

      Alternate Email: secretaryrick@yahoo.com

      Created: June 26, 2006

      Terms of Service IP: 69.235.82.129

      Birthday: May 25, 1965

      Status: Disabled

      Last Login: November 10, 2020

      Recovery Email: rwnichols@capousd.org

      Recovery SMS: 714-803-9798

      b.     cvhspac@gmail.com

      Google Account ID: 75254952567

      Name: Rick Nichols

      Created: February 3, 2014

      Terms of Service IP: 216.100.90.25

Last Login: December 3, 2014

Recovery Email: rwnichols@capousd.org

Recovery SMS: 714-803-9798

c.   ricknichols05@gmail.com

Google Account ID: 510074310782

Name: Rick Nichols

Created: April 22, 2018

Terms of Service IP: 45.50.100.191

Birthday: May 25, 1965

Last Login: February 2, 2021

Recovery Email: twowheelrick@gmail.com

Recovery SMS: 714-803-9798

d.   twowheelrick@gmail.com

Google Account ID: 387577141602

Name: Rick

Created: November 11, 2020

Terms of Service IP: 45.51.5.179

Birthday: May 25, 1965

Last Login: January 27, 2021

Recovery Email: cosmicblort@gmail.com

Recovery SMS: 714-803-9798

15.     While reviewing the SUBJECT ACCOUNT, I found two folders located at file

path 5138050-20210125-1\5138050-20210125-1\cosmicblort\Drive_001\Drive\Google

Photos\2017\05 &06 that contained 9 images of what appeared to be images taken of children

attending the High School that NICHOLS works at.  It appears the children did not know their

photograph was being taken because the photographs were taken through an office window.

There was one video of three minor females dancing in front of the office window.  There are

two images of one minor female that appears to be changing her costume for a performance while she is being assisted by another female; she is only wearing her under garments.  I was able to determine that NICHOLS was at Capistrano Valley High School on May 23, 2017, when two of the images were taken based on location coordinates provided by Google when these images were taken.  The location data provided was incomplete on May 24, 2017, May 19, 2017, and June 9, 2017, when the other images were taken, so NICHOLS' location at those times cannot be confirmed based on the location data provided.

16.     During the review of the SUBJECT ACCOUNT, I found a picture of NICHOLS' Capistrano Valley High School 2019/2020 Faculty/Staff ID badge and Capistrano Unified School District ID badge, which identifies NICHOLS as the Lead Theater Technician.  Both ID badges have a picture of NICHOLS, which I compared to NICHOLS' California Driver's License number C1488441 photograph, and determined all three photographs depict NICHOLS.  A picture of NICHOLS' current passport, number 541625670, which bears a photograph of NICHOLS, is saved to the SUBJECT ACCOUNT.

17.     There is a Microsoft Word document titled "what rick and Isa had", created on March 25, 2018, saved to the SUBJECT ACCOUNT, with an author of Rick, and it lists the assets and liabilities for Rick and Isa.  The document lists phone number 714-803-9798, as belonging to Rick, 714-317-5400 belongs to Isa, and 714-457-9928 belongs to Taoh. 714-803-9798, belonging to "Rick", is a number associated with the SUBJECT ACCOUNT.  Based on reviewing emails in the SUBJECT  ACCOUNT, I believe that Isa is NICHOLS' ex-wife and I believe that Taoh is NICHOLS' adult son.

18.     A document titled "user names," created on March 14, 2018, was found in the SUBJECT ACCOUNT and lists the user names, email addresses, and passwords for the online

accounts associated with NICHOLS, Isa, and Taoh.  A review of the emails in the SUBJECT ACCOUNT showed the emails were primarily to or from NICHOLS with no other recipients or senders of emails.

19.     According to the information received from Google, the following devices were used to access the SUBJECT ACCOUNT:

a.     Google Pixel 4a, which according to emails in the SUBJECT ACCOUNT, belongs to NICHOLS.

b.     Quest 2 tablet

c.     Samsung cell phone SM-G973U

d.     Google Assistant on a smart speaker

e.     Television

f.     Three Windows personal computers

20.     I located a file in the SUBJECT ACCOUNT that contained the bookmarks for the The Onion Router (TOR) web browser that was being used by the owner of the SUBJECT ACCOUNT.  TOR allows the user of the web browser to navigate the internet anonymously by routing their internet traffic through proxy servers.  The following is a list of the bookmarks, many of which, based on my training and experience, contain titles indicative of child pornography:

a.     Lolitas from users, Spots of Purity, Added March 11, 2020.

b.     Studio #5, page 4, Small Models, Added March 11, 2020.

c.     Gvenet; Alice; Princess – Trio, Small Models, added March 11, 2020.

d.     Videos – Irene girl with dad sex, Added March 15, 2020.

e.     Top 31 List of Best Dark Websites, Onion Deep Web in Year 2020, added March 15, 2020

f.     OnionDir – Adult, added March 16, 2020.

g.     Porn Videos – XONIONS, added March 16, 2020

13

     h.      365CP, added March 18, 2020

     i.      List Lolita porn, URLs CP Kids, Wiki childrens cp, added March 29, 2020

     j.      Lolitaporn, Dark Social network, added March 29, 2020

     k.      Girls&water64.jpg, Dark social network, added March 29, 2020.

     l.      Erotic photos of little girls, Dark social network, addedMarch 29, 2020

     m.     Search Child cp List child porn Links cp Directory kids sex lotlita sites Wiki childrens

     n.      pedo, added March 23, 2020

     o.      Pedo children – Photo gallery Lolita porn, added March 29, 2020

     p.      CP kids, photo gallery Lolita porn, added March 29, 2020

     q.      Hidden Wiki .Onion Urls / Links Deep Web Tor Wiki, OnionList TOR Deep Web Hidden Wiki,

     r.      added March 29, 2020

     s.      CP Pics kids, Photo gallery lola porn, added March 29, 2020

    21.     The following is a description of three child pornography videos I reviewed during the search of the SUBJECT ACCOUNT:

     a.      File Name: aaaxtmnoos (46), This video is 49 minutes 26 seconds and is a compilation of child erotica and child pornography videos that depict a Caucasian female with dark brown hair ranging in age from 10 – 14 years old.  The video depicts the minor female taking off her clothes, posing in sexual positions, engaging in sex acts with herself and adults, bondage, and bestiality.

     b.      File Name: 00146 part3, This video is 14:00 minutes long and depicts a Caucasian, pre-pubescent, 10 -12 year old female engaged in oral copulation of and by an adult male and having her anus penetrated by a foreign object, and then the adult male masturbates until he ejaculates on her face and in her mouth. The minor female is only wearing red, white, and blue thigh high leggings and the adult male is nude during the video.

c.       File Name: action0281, this file is an image that depicts a Caucasian female with blond hair that appears to be 10 – 12 years old orally copulating and adult male with an erect penis. The minor female is nude, laying on a bed that has white sheets with purple and yellow print, and the adult male is nude while his legs are straddling the mid-section of the minor female. There is a label in the bottom left hand corner of the image that has a picture of a red pepper with letters spelling out "preteens HOTPRETEENSINFO".

22.       On November 24, 2020, I sent Google, LLC a preservation letter requesting that information associated with the SUBJECT ACCOUNT be preserved for 90 days pursuant to 18 U.S.C. § 2703(f).

23.       On November 30, 2020, I sent a DHS Summons to AT&T to obtain subscribe information for 714-803-9798, which is associated with the SUBJECT ACCOUNT.  On the evening of December 4, 2020, I received the following information in response to the DHS Summons:

a.       Number(s) listed in the Legal Demand may not have been assigned to AT&T or an AT&T subscriber(s) during the entire time frame listed. However, although the number(s) may have been assigned to another carrier during some or all of the time requested, the number(s) may have roamed on the AT&T network or received/made calls from/to an AT&T subscriber during the referenced date range, and, if available, AT&T has produced that responsive information.  These numbers will not be accompanied by a subscriber report.  After conducting a thorough search of all identifiers listed in the legal demand, all available information responsive to this demand is enclosed.

24.       On November 30, 2020, I queried telephone number 714-803-9798 through CLEAR, a service that compiles public and proprietary information into a searchable database.

15

According to information in CLEAR, telephone number 714-803-9798 is associated with "Nichols Rick Company," located at 1522 West Lorane Way, in Anaheim, California (i.e., the SUBJECT PREMISES).

25.     I then searched the West Lorane Way address in CLEAR.  According to information in CLEAR, the following three people have been associated with the West Lorane Way address: Taoh Nichols (born August 7, 1998), Rick Nichols (born May 25, 1965), and Isabelle Nichols (born September 20, 1973); however, based on evidence found during the search of the SUBJECT ACCOUNT, including an emailed invoice in the amount of $1,415.00 from a company named Family Matters and mediation documents for a divorce emailed to Family Matters that have email addresses ending in "divorcehelpoc.net" from NICHOLS and Isabelle Nichols, I believe that Isabelle Nichols has moved out of the SUBJECT PREMISES.

26.     On February 19, 2021, I served a DHS Summons to Charter Communications to obtain subscriber information for IP address 45.51.5.179, that was used to access the SUBJECT Account on November 12, 2020.  According to the Charter Communications response, the IP address was subscribed to Rick Nichols, 1522 West Lorane Way, Anaheim, CA 92802, cosmicblort@gmail.com, 714-803-9798.

27.     On February 18, 2021, I contacted a U.S. Postal Inspection Service ("USPIS") employee to determine who received mail at the SUBJECT PREMISES.  According to the USPIS employee, Rick W. Nichols, Isabelle Nichols, and Taoh Nichols receive mail at the SUBJECT PREMISES.

28.     I reviewed the Capistrano Valley High School website, available at www.cvhs.com.  On the webpage entitled CVHS Theatre Arts (available at www.cvhs.com/drama), "Rick Nichols" is identified as "Capistrano Performing Arts Center

16

Theater Manager" with telephone extension 2707 and email address rwnichols@capousd.org.

## VII.      <u>TRAINING AND EXPERIENCE ON INDIVIDUALS WITH A SEXUAL INTEREST IN CHILDREN</u>

29.      Based on the information above, there is probable cause to believe that someone at the SUBJECT PREMISES possesses child pornography, and also makes it available for distribution. Based on my training and experience, and the training and experience of other law enforcement officers with whom I have had discussions, I have learned that individuals who view and possess multiple images of child pornography are often individuals who have a sexual interest in children and in images of children, and that there are certain characteristics common to such individuals:

a.     Individuals who have a sexual interest in children or images of children may receive sexual gratification, stimulation, and satisfaction from contact with children or from fantasies they may have from viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or in other visual media, or from literature describing such activity.

b.     Individuals who have a sexual interest in children or images of children may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides, and/or drawings or other visual media. Individuals who have a sexual interest in children or images of children oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

c.     Individuals who have a sexual interest in children or images of children sometimes possess and maintain "hard copies" of child pornographic material – that is, pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc. When they do, they generally possess these materials in the privacy and security of their home or some other secure location. When individuals who have a sexual interest in

children or images of children collect pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and/or videotapes, they often retain these materials for many years.

d.   Likewise, individuals who have a sexual interest in children or images of children often maintain their collections that are in a digital or electronic format in a safe, secure, and private environment, such as a computer and surrounding area. These collections are often maintained for several years and are kept close by, usually at the collector's residence, to enable the individual to view the collection, which is valued highly.

e.   Individuals who have a sexual interest in children or images of children may correspond with and/or meet others to share information and materials; often retain correspondence from other child pornography distributors/ collectors; conceal such correspondence as they do with their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact with and who share the same interests in child pornography.

f.   Individuals who have a sexual interest in children or images of children prefer not to be without their child pornography for any prolonged time period.     This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

## VIII.   TRAINING AND EXPERIENCE ON DIGITAL DEVICES[1]

30.    Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that the following electronic evidence, inter alia, is often retrievable from digital devices:

a.   Forensic methods may uncover electronic files or remnants of such files

---

[1]  As used herein, the term "digital device" includes any electronic system or device capable of storing or processing data in digital form, including central processing units; desktop, laptop, notebook, and tablet computers; personal digital assistants; wireless communication devices, such as paging devices, mobile telephones, and smart phones; digital cameras; gaming consoles; peripheral input/output devices, such as keyboards, printers, scanners, monitors, and drives; related communications devices, such as modems, routers, cables, and connections; storage media; and security devices.

months or even years after the files have been downloaded, deleted, or viewed via the Internet. Normally, when a person deletes a file on a computer, the data contained in the file does not disappear; rather, the data remain on the hard drive until overwritten by new data, which may only occur after a long period of time.  Similarly, files viewed on the Internet are often automatically downloaded into a temporary directory or cache that are only overwritten as they are replaced with more recently downloaded or viewed content and may also be recoverable months or years later.

b.   Digital devices often contain electronic evidence related to a crime, the device's user, or the existence of evidence in other locations, such as, how the device has been used, what it has been used for, who has used it, and who has been responsible for creating or maintaining records, documents, programs, applications, and materials on the device.  That evidence is often stored in logs and other artifacts that are not kept in places where the user stores files, and in places where the user may be unaware of them.  For example, recoverable data can include evidence of deleted or edited files; recently used tasks and processes; online nicknames and passwords in the form of configuration data stored by browser, e-mail, and chat programs; attachment of other devices; times the device was in use; and file creation dates and sequence.

c.   The absence of data on a digital device may be evidence of how the device was used, what it was used for, and who used it.  For example, showing the absence of certain software on a device may be necessary to rebut a claim that the device was being controlled remotely by such software.

d.   Digital device users can also attempt to conceal data by using encryption, steganography, or by using misleading filenames and extensions.  Digital devices may also contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed.  Law enforcement continuously develops and acquires new methods of decryption, even for devices or data that cannot currently be decrypted.

31.    Based on my training, experience, and information from those involved in the

forensic examination of digital devices, I know that it is not always possible to search devices for data during a search of the premises for a number of reasons, including the following:

a.   Digital data are particularly vulnerable to inadvertent or intentional modification or destruction.  Thus, often a controlled environment with specially trained personnel may be necessary to maintain the integrity of and to conduct a complete and accurate analysis of data on digital devices, which may take substantial time, particularly as to the categories of electronic evidence referenced above.  Also, there are now so many types of digital devices and programs that it is difficult to bring to a search site all of the specialized manuals, equipment, and personnel that may be required.

b.   Digital devices capable of storing multiple gigabytes are now commonplace. As an example of the amount of data this equates to, one gigabyte can store close to 19,000 average file size (300kb) Word documents, or 614 photos with an average size of 1.5MB.

32.   The search warrant requests authorization to use the biometric unlock features of a device, based on the following, which I know from my training, experience, and review of publicly available materials:

a.   Users may enable a biometric unlock function on some digital devices.  To use this function, a user generally displays a physical feature, such as a fingerprint, face, or eye, and the device will automatically unlock if that physical feature matches one the user has stored on the device.  To unlock a device enabled with a fingerprint unlock function, a user places one or more of the user's fingers on a device's fingerprint scanner for approximately one second.  To unlock a device enabled with a facial, retina, or iris recognition function, the user holds the device in front of the user's face with the user's eyes open for approximately one second.

b.   In some circumstances, a biometric unlock function will not unlock a device even if enabled, such as when a device has been restarted or inactive, has not been unlocked for a certain period of time (often 48 hours or less), or after a certain number of unsuccessful unlock attempts.  Thus, the opportunity to use a biometric unlock function even on

an enabled device may exist for only a short time.  I do not know the passcodes of the devices likely to be found in the search.

        c.   Thus, the warrant I am applying for would permit law enforcement personnel to, with respect to any device that appears to have a biometric sensor and falls within the scope of the warrant: (1) depress NICHOLS' thumb and/or fingers on the device(s); and (2) hold the device(s) in front of NICHOLS' face with his or her eyes open to activate the facial-, iris-, and/or retina-recognition feature.

    33.    Other than what has been described herein, to my knowledge, the United States has not attempted to obtain this data by other means.

//

//

## IX.   <u>CONCLUSION</u>

34.     For all the reasons described above, there is probable cause to believe that evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 2252A(a)(5)(B) (possession of child pornography) and 18 U.S.C. § 2252(a)(4)(B)(i)(ii) (accessing with the intent to view child pornography), as described in Attachment B to this affidavit, will be found in a search of the SUBJECT PREMISES, which is further described above and in Attachment A of this affidavit.


/s/
_____
TIMOTHY KIRKHAM,
Special Agent, Homeland Security
Investigations


Attested by the applicant in accordance with the
requirements of Fed. R. Crim. P. 4.1 by telephone
on this 1st day of March, 2021.

_____
HONORABLE JOHN D. EARLY
UNITED STATES MAGISTRATE JUDGE

# **ATTACHMENT**
## **A**

## **PREMISES TO BE SEARCHED**

The SUBJECT PREMISES is the property located at 1522 West Lorane Way, Anaheim, CA 92802, any outbuildings, and any appurtenances thereto.  The SUBJECT PREMISES is a single-story single-family home.  The SUBJECT PREMISES is white with blue eaves and trim and a grey shingle roof.  Black numbers "1522" are painted on the curb in black on a white background.  The SUBJECT PREMISES is on the south side of Lorane Way.  The front door is facing east and has a black metal security.

# ATTACHMENT
# B

## I.    ITEMS TO BE SEIZED

1.    The items to be seized are evidence, contraband, fruits, or instrumentalities of violations of 18 U.S.C. § 2252A(a)(5)(B) (possession of child pornography) and 18 U.S.C. § 2252(a)(4)(B)(i)(ii) (accessing with the intent to view child pornography) (the "Subject Offenses"), namely:

a.    Child pornography, as defined in 18 U.S.C. § 2256(8).

b.    Any records, documents, programs, applications, or materials, including electronic messages, that refer to child pornography, as defined in 18 U.S.C. § 2256(8), including documents that refer to the possession, receipt, distribution, transmission, reproduction, viewing, sharing, purchasing, or downloading, production, shipment, ordering, requesting, or trading of child pornography, or documents that refer to a transaction of any kind involving child pornography.

c.    Any records, documents, programs, applications, or materials, including electronic mail and electronic messages, that identify persons involved in the possession, receipt, distribution, transmission, reproduction, viewing, sharing, purchasing, or downloading, production, shipment, ordering, requesting, or trading of child pornography, or involved in a transaction of any kind involving child pornography, as defined in 18 U.S.C. § 2256(8).

d.    Any records, documents, programs, applications, or materials, including electronic messages, that identify any minor visually depicted while engaging in sexually explicit conduct, as defined in 18 U.S.C. § 2256.

e.    Any and all records, documents, programs, applications, materials, or items that are sexually arousing to individuals who are interested in minors, but that are not in and of themselves obscene or that do not necessarily depict minors involved in sexually explicit conduct.  Such material is commonly known as "child erotica" and includes written materials

2

dealing with child development, sex education, child pornography, sexual abuse of children, incest, child prostitution, missing children, investigative techniques relating to child exploitation, sexual disorders, pedophilia, nudist publications, diaries, and fantasy writings.

    f. Any records, documents, programs, applications, or materials, including electronic messages, that pertain to the use of cloud storage providers to store child pornography or child erotica.

    g. Any records, documents, programs, applications, or materials, including electronic messages, that pertain to accounts with any Internet Service Provider.

    h. Any records, documents, programs, applications, or materials, including electronic messages, regarding ownership and/or possession of the SUBJECT PREMISES, i.e., 1522 West Lorane Way, Anaheim, CA 92802.

    i. Any digital device which is itself or which contains evidence, contraband, fruits, or instrumentalities of the Subject Offense/s, and forensic copies thereof.

    j. With respect to any digital device used to facilitate the above-listed violations or containing evidence falling within the scope of the foregoing categories of items to be seized:

    i. evidence of who used, owned, or controlled the device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, e-mail, e-mail contacts, chat and instant messaging logs, photographs, and correspondence;

    ii. evidence of the presence or absence of software that would allow others to control the device, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

    iii. evidence of the attachment of other devices;

    iv. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the device;

      v.        evidence of the times the device was used;

      vi.        passwords, encryption keys, biometric keys, and other access devices that may be necessary to access the device; applications, utility programs, compilers, interpreters, or other software, as well as documentation and manuals, that may be necessary to access the device or to conduct a forensic examination of it;

      vii.       records of or information about Internet Protocol addresses used by the device;

      viii.       records of or information about the device's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

2.      As used herein, the terms "records," "documents," "programs," applications," and "materials" include records, documents, programs, applications, and materials created, modified, or stored in any form, including in digital form on any digital device and any forensic copies thereof.

3.      As used herein, the term "digital device" includes any electronic system or device capable of storing or processing data in digital form, including central processing units; desktop, laptop, notebook, and tablet computers; personal digital assistants; wireless communication devices, such as telephone paging devices, beepers, mobile telephones, and smart phones; digital cameras; gaming consoles (including Sony PlayStations and Microsoft Xboxes); peripheral input/output devices, such as keyboards, printers, scanners, plotters, monitors, and drives intended for removable media; related communications devices, such as modems, routers, cables, and connections; storage media, such as hard disk drives, floppy disks, memory cards, optical disks, and magnetic tapes used to store digital data (excluding analog tapes such as VHS); and security devices.

## II.    <u>SEARCH PROCEDURE FOR DIGITAL DEVICES</u>

4.      In searching digital devices or forensic copies thereof, law enforcement personnel

executing this search warrant will employ the following procedure:

a.   Law enforcement personnel or other individuals assisting law enforcement personnel (the "search team") will, in their discretion, either search the digital device(s) on-site or seize and transport the device(s) and/or forensic image(s) thereof to an appropriate law enforcement laboratory or similar facility to be searched at that location.  The search team shall complete the search as soon as is practicable but not to exceed 120 days from the date of execution of the warrant.  The government will not search the digital device(s) and/or forensic image(s) thereof beyond this 120-day period without obtaining an extension of time order from the Court.

b.   The search team will conduct the search only by using search protocols specifically chosen to identify only the specific items to be seized under this warrant.

i.   The search team may subject all of the data contained in each digital device capable of containing any of the items to be seized to the search protocols to determine whether the device and any data thereon falls within the list of items to be seized.  The search team may also search for and attempt to recover deleted, "hidden," or encrypted data to determine, pursuant to the search protocols, whether the data falls within the list of items to be seized.

ii.   The search team may use tools to exclude normal operating system files and standard third-party software that do not need to be searched.

iii.   The search team may use forensic examination and searching tools, such as "EnCase" and "FTK" (Forensic ToolKit), which tools may use hashing and other sophisticated techniques, including to search for known images of child pornography.

c.   If the search team, while searching a digital device, encounters immediately apparent contraband or other evidence of a crime outside the scope of the items to be seized, the team shall immediately discontinue its search of that device pending further order of the Court and shall make and retain notes detailing how the contraband or other evidence of a crime was encountered, including how it was immediately apparent contraband or evidence of a crime.

d.   If the search determines that a digital device does not contain any data falling within the list of items to be seized, the government will, as soon as is practicable, return the device and delete or destroy all forensic copies thereof.

e.   If the search determines that a digital device does contain data falling within the list of items to be seized, the government may make and retain copies of such data, and may access such data at any time.

f.   If the search determines that a digital device is (1) itself an item to be seized and/or (2) contains data falling within the list of other items to be seized, the government may retain the digital device and any forensic copies of the digital device, but may not access data falling outside the scope of the other items to be seized (after the time for searching the device has expired) absent further court order.

g.   The government may also retain a digital device if the government, prior to the end of the search period, obtains an order from the Court authorizing retention of the device (or while an application for such an order is pending), including in circumstances where the government has not been able to fully search a device because the device or files contained therein is/are encrypted.

h.   After the completion of the search of the digital devices, the government shall not access digital data falling outside the scope of the items to be seized absent further order of the Court.

5.   The review of the electronic data obtained pursuant to this warrant may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the investigating agency may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

6

6.    In order to search for data capable of being read or interpreted by a digital device, law enforcement personnel are authorized to seize the following items:

a.    Any digital device capable of being used to commit, further, or store evidence of the offense(s) listed above;

b.    Any equipment used to facilitate the transmission, creation, display, encoding, or storage of digital data;

c.    Any magnetic, electronic, or optical storage device capable of storing digital data;

d.    Any documentation, operating logs, or reference manuals regarding the operation of the digital device or software used in the digital device;

e.    Any applications, utility programs, compilers, interpreters, or other software used to facilitate direct or indirect communication with the digital device;

f.    Any physical keys, encryption devices, dongles, or similar physical items that are necessary to gain access to the digital device or data stored on the digital device; and

g.    Any passwords, password files, biometric keys, test keys, encryption codes, or other information necessary to access the digital device or data stored on the digital device.

7.    During the execution of this search warrant, law enforcement is permitted to: (1) depress Richard Wayne Nichols' thumb and/or fingers onto the fingerprint sensor of the device (only when the device has such a sensor), and direct which specific finger(s) and/or thumb(s) shall be depressed; and (2) hold the device in front of Richard Wayne Nichols' face with his or her eyes open to activate the facial-, iris-, or retina-recognition feature, in order to gain access to the contents of any such device.  In depressing a person's thumb or finger onto a device and in holding a device in front of a person's face, law enforcement may not use excessive force, as defined in Graham v. Connor, 490 U.S. 386 (1989); specifically, law enforcement may use no more than objectively reasonable force in light of the facts and circumstances confronting them.

8.    The special procedures relating to digital devices found in this warrant govern only the search of digital devices pursuant to the authority conferred by this warrant and do not

apply to any search of digital devices pursuant to any other court order.